IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 19-cv-03041-RBJ

DAVID BRINK,
NANCY BRINK,
MARK HILLE,
SUZANN HILLE,
INGWALD ROSTVEIT, and
DARLA ROSTVEIT,

     Plaintiffs,

v.

BANK OF AMERICA, N.A.,
CARRINGTON MORTGAGE SERVICES, LLC, and
MORTGAGE CONTRACTING SERVICES, LLC,

     Defendants.

---

## ORDER SETTING ASIDE DEFAULT

---

On September 22, 2017 a fire began on a property known as 414 Morning Dove Court in Grand Junction, Colorado. The fire damaged real and personal property in the homes of three couples who lived nearby, and this lawsuit was born to settle the tab. One of the three defendants defaulted. The present order addresses its motion to set aside the default.

## I. FACTS.

The story goes back several months before the fire. The previous owners of 414 Morning Dove Court, a couple named Varner, had allowed their trailer on the property to deteriorate, trash to accumulate, and weeds to grow wild to the point that the property was an eyesore and a fire

hazard.  The Varners abandoned the place, and in April 2017 the Bank of America ("Bank"), which held a security interest in the property, commenced foreclosure proceedings.  But, to the continuing consternation of the neighbors, the sorry state of the property continued.  Even after the Bank took title on August 22, 2017, nothing was done.

On September 20, 2017 Mrs. Brink registered a last, forlorn complaint with Mesa County.  The fire two days later literally trashed the trash and caused severe damage to the nearby homes.  But, while the neighbors went about the task of restoring their property as best they could, the Bank did not clean up the fire debris.

On January 19, 2018 a Mesa County Code Enforcement officer notified Safeguard Properties of Valley View Ohio, apparently believed to be the property servicer for the Bank, that the fire debris remaining on the site was a violation of the building code.  The officer apparently learned that Carrington Mortgage Servicers was the Bank's new servicer and forwarded the notice of violation to Carrington on January 22, 2018.  ECF No. 40-1 at 1-2. Receiving no response, on February 12, 2018 the County notified Carrington and the Bank that if it still heard nothing by February 17, 2018, the property would be in "non-compliance" status and legal action would be considered.  *Id.* at 3.

On February 23, 2018 Mortgage Contracting Services, LLC ("MCS") entered the picture. James Hall, Asset Preservation Coordinator for MCS, spoke on the phone with Officer Rix of Mesa County Code Compliance Services and followed the call with an email.  In the email he advised that "[w]e currently have bids submitted to our client for multiple possible actions," and "a decision should be reached in due time."  *Id.* at 4.  In the meantime, he offered, Officer Rix should feel free to contact him "if any new issue arises with the property."  ECF No. 40-1 at 4.

2

The County took this as a promising development, responding that it would suspend the County Attorney's review of the case and continue the deadline to correct violations to March 26, 2018. *Id.* at 4-5.

But a month went by, and nothing happened. On March 23, 2018 the County emailed Mr. Hall, once again rattling the sabre of possible legal action if MCS didn't confirm within 15 days that cleanup would begin in April. *Id.* at 6. This proved to be a hollow threat. April and May came and went. On June 4, 2018 Mesa County Compliance Services notified Mr. Hall that the property had been placed in "violation continued status" and would be reviewed for a court process unless he provided a date certain when a cleanup process would begin. *Id.* at 7.

Mr. Hall responded twice on June 5, 2018. In his first email he informed the County that he had had "a work order in the field since 5/09," but the vendor "failed to complete the removal." Therefore, "I am getting in touch with a different vendor to expedite the process and avoid any sort of legal repercussions. I will send you an email as soon as [I] hear back from this vendor so that I can be sure that they are going to complete this in a timely fashion." *Id.* In his second email he reported that a new vendor had agreed to accept the order but would need a couple of weeks to complete a lead and asbestos inspection before removing materials from the site. *Id.* at 8.

Mesa County Compliance Services responded on June 6, 2018, stating in an email that it interpreted Mr. Hall's emails as indicating that a contractor would start cleaning the property in about two weeks after tests for lead and asbestos were completed. *Id.* at 8. Nevertheless, the email requested contact information for the contractor and an estimated date when all fire debris would be gone in order to call off the County Attorney. *Id.* at 9. Mr. Hall replied that he had

informed the contractor (whom he did not identify) to notify the County of its timeline within a couple of days. *Id.* But in case the County has not heard from "my contractor" by the middle of the next week, it should contact Mr. Hall so that he could make sure that everything would go smoothly. He concluded, "Thank you so much for understanding and allowing us to remove this debris within the month." *Id.*

Time passed. The contractor didn't call. On July 2, 2018 the County informed Mr. Hall, in bold letters this time, that "**We have not had any contact with any contractor since the last email, June 6, 2018.** *Id.* at 11. Mr. Hall responded the next day, but his rosy, if vague, optimism was gone. He said, "I have forwarded this on to the department that is handling the situation. The status of the loan has changed and it may have sold. I followed up and am expecting a response soon." *Id.*

On July 11, 2018 a different Asset Preservation Coordinator for MCS, Sharon McEwen, sent an email to Mesa County Compliance Service requesting a copy of the violation concerning the property. *Id.* at 12. Compliance Services responded by telephone and email, indicating that the violation dated back to January 17, 2018, and providing copies of the email correspondence with Mr. Hall. *Id.* at 12-13. Ms. McEwen acknowledged receipt of the information on July 12, 2018. *Id.* at 14. But that is the last communication in the record between Mesa County and MCS. The Bank apparently sold the property on July 17, 2018. *See* ECF No. 4 at ¶45. The property allegedly had not been cleaned up or remediated when it was sold. *Id.* at ¶46.

Lawsuit. On September 19, 2019 plaintiffs filed this case in the District Court for Mesa County, naming the Bank and Carrington as defendants. ECF No. 4. They alleged that defendants' negligent maintenance of the property was a cause of the fire that damaged their

property, and that the condition of the property both before and after the fire was a nuisance which also caused injuries and damages to the them. *Id.* Defendants removed the case to this Court, asserting jurisdiction based upon diversity of citizenship. ECF No. 1. On October 24, 2018 plaintiffs filed their First Amended Complaint in which they added MCS as a defendant to the nuisance claim. ECF No. 5.

Default. MCS was served on November 12, 2019. *See* ECF No. 16. Its response was due on December 3, 2019. No response was filed, and on February 18, 2020 plaintiffs moved for entry of default. ECF No. 29. On February 20, 2020, the Clerk entered a default against MCS. ECF No. 34.

Case Schedule. On the day between the motion for default and the Clerk's entry of a default the Court held a Scheduling Conference with counsel for the plaintiffs, the Bank and Carrington. The parties and Court agreed on the following dates:

- Amendment of pleadings April 6, 2020

- Expert disclosures August 19, 2020

- Rebuttal experts September 18, 2020

- Discovery cutoff October 19, 2020

- Dispositive motions deadline November 18, 2020

- Trial Preparation Conference April 2, 2021

- Trial (7 days jury in Grand Junction) May 17, 2021

*See* ECF Nos. 31-33.

MCS's Motion to Set Aside the Default. On March 31, 2020 MCS moved for an order setting aside the default and granting MCS permission to file an Answer out of time. ECF No.

35.  The motion states that MCS's failure to file a timely response was caused by an oversight by its liability insurer.  The insurer, Aspen Specialty Insurance, retained to defend MCS but not until the day the default entered.  Then, due to checking for conflicts, investigating the circumstances of the default, and the coronavirus pandemic, it took another month (actually 40 days) before the motion to set aside the default was filed.  *Id.* at 3.  An Answer was filed the same day.  ECF No. 36.

> I denied the motion "without prejudice, noting that the motion
>
> does not explain how or why defendant did nothing when the insurance company did not appoint counsel and file a timely response to the complaint.  It provides no proof that the insurance company was negligent, i.e., no evidence from the insurance company admitting and explaining fault.  At this point it appears to the Court to be simple neglect on the part of this defendant.

*Id.*

MCS's Second Motion to Set Aside the Default.  On April 15, 2020 MCS refiled its motion to set aside the default.  ECF Nos. 38 and 4.  This time MCS attached several documents:

- A letter from Aspen Specialty Insurance Company to Kim Drake-Loy of MCS dated October 11, 2019.  ECF No. 38-1.  In the letter the insurer acknowledged that MCS had notified it of a potential claim by "Brink, et al.," with a date of loss of September 22, 2019.  ECF No. 38-1.  The letter states, "[w]e will be reviewing the information that has been provided to us in an effort to determine what rights or coverage may be provided for this matter under the terms of the above-noted policy . . . . In the event you receive or obtain additional information relating to this matter, please advise us and forward all pertinent documents and information."  *Id.*  The potential claim was assigned to claims adjuster Phil Cotto.  *Id.*

- A notice from MCS to Aspen Specialty Insurance transmitting the Summons and First Amended Complaint.  ECF No. 38-2.  The notice was sent on November 12, 2019, the day that MCS was served.

- An email from Ms. Drake-Loy of MCS on November 13, 2019 to the insurance adjuster, Mr. Cotto, and another gentleman at Aspen Specialty Insurance confirming that MCS had been served, and that an Answer needed to be filed.  ECF No. 38-3.  Ms. Drake-Loy expressed a preference to be defended by Wilson, Elser law firm, if possible.  *Id.*

- The Declaration of Mr. Cotto.  ECF No. 38-4.  He acknowledged MCS's notice to Aspen Specialty Insurance of a potential claim on October 11, 2019; and MCS's notice of service of the Summons and First Amended Complaint on November 12, 2019; and Ms. Drake-Loy's email of November 13, 2019.  *Id.* at ¶¶6-8.  He states that after receipt of those papers Aspen "continued to evaluate the claim," but "[u]nfortunately, I did not retain counsel for MCS until February 20, 2020, which was the same day that a default was entered against MCS."  *Id.* at ¶¶9, 10.  Mr. Cotto adds that his failure to timely retain defense counsel for MCS was "an inadvertent mistake on my part because the coverage investigation took longer than expected."  *Id.* at ¶11.  Thus, "I attest that MCS's failure to respond was not its fault."  *Id.* at ¶13.

- A Declaration of Gary Benavidez, Assistant Vice President of MCS, who states that "MCS was under the impression that Aspen as its insurance carrier was handling the case appropriately and would retain defense counsel to file a timely answer."  ECF No. 38-5 at ¶9.  According to Mr. Benavidez, "MCS mistakenly relied on Aspen to assign defense

counsel and timely respond to the lawsuit," and that "MCS did not intentionally, willfully, or in bad faith not respond to the Brink lawsuit." *Id.* at ¶¶10, 11.

In its motion MCS also asserts that it has a meritorious defense, i.e., that it never had authority to remove the fire debris.  ECF No. 38 at 6.

Plaintiffs' Response.  Plaintiffs provided the documentation of the facts leading up to the lawsuit that I have set forth above.  ECF No. 40.  Plaintiffs assert that if MCS had timely answered the complaint on December 3, 2019, "discovery involving MCS would have begun" that day, and MCS's disclosures would have been due in late December or early January.  *Id.* at 4.  Plaintiffs note that MCS did not provided any explanation as to why it did not follow up when Aspen Specialty Insurance did not appoint a lawyer to file a timely answer on its behalf.  They note that Aspen failed to adequately explain why it took so long to retain counsel, and they questioned why it took the retained lawyers 40 days to perform a "routine investigation and conflicts check."  *Id.* at 5-6.  Plaintiffs also dispute MCS's claim that it lacked authority to clean up the site, pointing to MCS's email correspondence with Mesa County between February and July 2018.  *Id.* at 6-7.

MCS's Reply.  MCS informs the Court that no discovery had been obtained in the case as of May 20, 2020, other than the original parties' exchange of initial disclosures.  ECF No. 41, MCS will provide its initial disclosures "immediately" if its motion to set aside the default is granted.  *Id.* at 3-4.  The reply also attaches a copy of a bid to clean up the fire debris for $18,900.90 that MCS submitted to Carrington on November 13, 2017.  ECF No. 41-2.  According to a Declaration by Assistant Vice President Benavidez, Carrington did not accept the

bid until May 9, 2018.  ECF No. 41-5 at ¶8.  However, Carrington "advised MCS to cancel its work on the subject property on June 7, 2018.  *Id.*

## II.  ANALYSIS AND CONCLUSIONS.

This Court may set aside an entry of default for good cause.  Fed. R. Civ. P. 55(c).  The cause required to set aside a default "poses a lesser standard for the defaulting party than the excusable neglect that must be shown for relief from judgment under Fed. R. Civ. P. 60(b)." *Dennis Garber & Associates, Inc. v. Pack-Tech International Corp.,* 115 F.3d 767, 775 n.6 (10th Cir. 1997).  "The principal factors in determining whether a defendant has met the good cause standard are (1) whether the default was the result of culpable conduct of the defendant, (2) whether the plaintiff would be prejudiced if the default should be set aside, and (3) whether the defendant presented a meritorious defense."  *Hunt v. Ford Motor Co.,* No. 94-3054, 1995 WL 523646, at *3 (10th Cir. 1995) (unpublished) (citing <u>*In re Dierschke,* 975 F.2d 181, 183 (5th Cir.1992)</u>).

"Generally, a defendant's conduct is considered culpable if he has defaulted willfully or has no excuse for the default."  *Hunt,* 1995 WL 523646 at *3.  There is no evidence that MCS defaulted willfully.  On the contrary, it notified its liability insurer of a potential claim on October 11, 2019, before this lawsuit was filed.  On the day MCS was served, November 12, 2019, it notified its insurer, and it followed that notice with an email to the assigned adjuster confirming its request that the insurer retain a lawyer to defend MCS in the case.

MCS's excuse for defaulting was that it was relying on its insurer to take appropriate steps to defend the case.  I grant that it is odd that MCS did not follow up when more than three months passed after the notice with no communication from either the insurer or a lawyer.  MCS

provided no explanation for this, even after I questioned its failure to follow up in my minute order denying its first motion to set aside the default.  But there is no doubt that the insurer was negligent in failing to honor its duty to defend.  Put simply, Aspen Specialty Insurance dropped the ball and exposed its insured to a default.  Given that the standard for setting aside a default is less demanding than "excusable neglect," and that defaults are generally disfavored, *see, e.g., Gomes v. Williams,* 420 F. 2d 1364, 1370 (10th Cir. 1970), I conclude that MCS, though negligent itself, had an excuse for defaulting.

Second, I do not find that plaintiffs would be prejudiced by my setting aside the default. Having to prove their claim is not prejudice.  Although plaintiffs assert that they would have commenced discovery against MCS on December 3, 2019 when the response was due, it turns out that the parties haven't even now begun discovery.  The discovery cutoff is October 19, 2020, and if that is not enough time for plaintiffs to complete their discovery (for example, due to pandemic issues), I am willing to extend the date.  The trial is still a year away.

Third, MCS has provided, as a defense, evidence purporting to show that it never was authorized by the Bank or Carrington to clean up the fire debris.  Plaintiffs question the validity of the alleged defense.  MCS's phone calls and emails between February and July 2018 implied, if not expressed, that it had a vendor ready to go on the cleanup.  At a minimum its representations to Mesa County Compliance Services delayed cleanup work (and thus prolonged the alleged nuisance) for several months.  But whether these facts ultimately will support a claim against MCS for damages or a viable defense against the claim are issues for another day. Suffice it to say that MCS has come forward with an arguable defense.

The bottom line is that I conclude that it is in the ends of justice to permit MCS to defend itself on the merits in the circumstances presented.

### III.   ATTORNEY'S FEES.

Plaintiffs ask the Court to order MCS to reimburse them for the attorney's fees they have incurred if the Court decides to set the default aside.  ECF No. 40 at 13.  They cite several orders by judges in this district awarding fees and costs incurred in seeking a default and responding to motions to set aside a default.  *Id.* at 13-14.  They also submit billing information showing that they have incurred $9,063 in attorney's fees, and their lawyers have affirmed the time and rates that generated those fees.  ECF No. 40-14.

MCS responds that it was improper to request a fee award in the response to the motion to set aside the default as opposed to doing so in a separate motion.  ECF No. 41 at 11.  MCS also suggests that the amount of fees requested is excessive, and that plaintiffs should only be awarded fees incurred to obtain the default, not fees incurred in responding to MCS's motion to set aside the default.  ECF No. 41 at 12.

I agree that plaintiffs should file a separate motion for an award of attorney's fees and costs.  Counsel should first confer, either by telephone or in person, and attempt in good faith to resolve both plaintiffs' entitlement to an award and the reasonable amount.  If agreement is not reached, plaintiffs may file their motion and set it for an evidentiary hearing.  For the parties' benefit, however, the Court's present inclination, subject to any briefing submitted, is to consider all attorney's fees reasonably incurred by the plaintiffs related to the default, including those that might be incurred preparing for and appearing at a hearing.  In determining what fees were reasonably incurred, I expect to consider, among other factors, the contributory fault of both

MCS and its liability insurer, on the one hand, and whether plaintiffs' counsel attempted to

contact MCS and alert it that its response was overdue, on the other hand.

## ORDER

For the reasons set forth, MCS's motion to set aside the default, ECF No. 38, is

GRANTED.

DATED this 28th day of May, 2020.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge